UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AHMED H. ABUBAKER EL KHAZMY,<br><br>Plaintiff,<br><br>v.<br><br>CUSTOMS AND BORDER PROTECTION,<br><br>Defendant. | Civil Action No. 23-0564 (CRC) |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant U. S. Customs and Border Protection ("CBP"), by and through undersigned counsel, respectfully moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 in this Freedom of Information Act ("FOIA") case brought by Plaintiff Ahmed H. Abubaker El Khazmy.   Attached in support of the CBP's motion are a memorandum of points and authorities, the declaration of Patrick A. Howard, a statement of material facts not in dispute, and a proposed order.

\*       \*       \*

Dated: November 17, 2023
     Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:        /s/ *Patricia K. McBride*
    PATRICIA K. MCBRIDE
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-7123
    patricia.mcbride@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AHMED H. ABUBAKER EL KHAZMY, | |
| Plaintiff, | |
| v. | Civil Action No. 23-0564 (CRC) |
| CUSTOMS AND BORDER PROTECTION, | |
| Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF CONTENT .................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

FACTAUL BACKGROUND ........................................................................................ 2

STANDARD OF REVIEW ........................................................................................... 2

    I.     Summary Judgment Standard ....................................................................... 2

    II.    Summary Judgment Standard as Applied to FOIA Cases ............................ 2

ARGUMENT .............................................................................................................. 3

    I.     CBP Conducted an Adequate Search ……………………………..…………..3

    II.    CBP Properly Accounted for All Responsive Records…………………………6

            Threshold Requirements of Exemption 7……………………………………..7

            CBP Properly Issued a Glomar Response Pursuant to Exemption 7(E)………………9

CONCLUSION ........................................................................................................ 13

## TABLE OF AUTHORITIES

**Cases**                                                                  **Page**

*ACLU v. U.S. Department of Defense, et. al.*,
  628 F.3d 612, 619 (D.C. Cir. January 2011).............................................. 9

*Agility Pub. Warehousing Co. v. National Security Agency*,
  113 F. Supp. 3d 313 (D.D.C. 2015) ..................................................... 10

*Ancient Coin Collectors Guild v. U.S. Dep't of State*,
  641 F.3d 504 (D.C. Cir. 2011)............................................................ 4

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)........................................................................ 2

*Baker & Hostetler LLP v. U.S. Dep't of Commerce*,
  473 F.3d 312 (D.C. Cir. 2006)............................................................ 4

*Banks v. Dep't of Just.*,
  538 F. Supp. 2d 228 (D.D.C. 2008) ..................................................... 8

*Braun v. FBI*,
  No. 18-2145, 2019 WL 3343948 (D.D.C. July 25, 2019) ................. 12, 13

*Brown v. Dep't of Just.*,
  742 F. Supp. 2d 126 (D.D.C. 2010) ..................................................... 3

*Campbell v. Dep't of Justice*,
  164 F.3d 20 (D.C. Cir. 1998)............................................................ 10

*Carter v. National Sec. Agency*,
  962 F. Supp. 2d 130 (D.D.C. 2013) ..................................................... 11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)........................................................................ 2

*Cent. Intelligence Agency v. Sims*,
  471 U.S. 159 (1985) ........................................................................ 11

*Chambers v. U.S. Dep't of Interior*,
  568 F.3d 998 (D.C. Cir. 2009)............................................................ 4

*Cozen O'Connor v. U.S. Dep't of Treasury*,
  570 F. Supp. 2d 749 (E.D. Pa. 2008) ................................................... 11

*Ctr. for Nat'l Policy Review on Race & Urban Issues v. Weinberger*,
  502 F.2d 370 (D.C. Cir. 1974)............................................................ 8

*Ctr. for Nat'l Sec. Studies v. Dep't of Justice*,
  331 F.3d 918 (D.C. Cir. 2003)............................................................ 11

*DiBacco v. U.S. Army*,
  795 F.3d 178 (D.C. Cir. 2015) ........................................................ 3, 4

*Gardels v. CIA*,
  689 F.2d 1100 (D.C. Cir. 1982) ................................................ 7, 10, 11

*International Counsel Bureau v. Central Intelligence Agency*,
  774 F. Supp. 2d 262 (D.D.C. 2011) ..................................................... 11

*Jefferson v. Dep't of Just.*,
  284 F.3d 172- (D.C. Cir. 2002)....................................................... 8, 9

*Keys v. Dep't of Just.*,
  830 F.2d 337 (D.C. Cir. 1987)............................................................ 8

*Larson v. Dep't of State,*
 565 F.3d 857 (D.C. Cir. 2009) ................................................................. 7, 9, 10
*Loving v. DOD,*
 550 F.3d 32 (D.C. Cir. 2008) ................................................................................ 3
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
 475 U.S. 574 (1986), ............................................................................................ 2
*McCready v. Nicholson,*
 465 F.3d 1 (D.C. Cir. 2006) .................................................................................. 4
*McErlean v. Dep't of Just.,*
 Civ. A. No. 97-7831, 1999 WL 791680 (S.D.N.Y.    Sept. 30, 1999) ..................... 8
*Meeropol v. Meese,*
 790 F.2d 942 (D.C. Cir. 1986) ............................................................................. 4
*Military Audit Project v. Casey,*
 656 F.2d 724 (D.C. Cir. 1981) ............................................................................. 3
*Miller v. Casey,*
 730 F.2d 773 (D.C. Cir. 1984) ............................................................................. 9
*Oglesby v. U.S. Dep't of the Army,*
 920 F.2d 57 (D.C. Cir. 1990) ............................................................................... 3
*Perry v. Block,*
 684 F.2d 121 (D.C. Cir. 1982) ............................................................................. 4
*Phillipi v. CIA,*
 546 F.2d 1009 (D.C. Cir. 1976) ................................................................... 10, 12
*Pratt v. Webster,*
 673 F.2d 408 (D.C. Cir. 1982) .......................................................................... 7, 8
*SafeCard Servs., Inc. v. SEC,*
 926 F.2d 1197 (D.C. Cir. 1991) ........................................................................... 4
*Salisbury v. United States,*
 690 F.2d 966 (D.C. Cir. 1982) ........................................................................... 11
*Steinberg v. Dep't of Just.,*
 23 F.3d 548 (D.C. Cir. 1994) ............................................................................... 3
*Students Against Genocide v. Dep't of State,*
 257 F.3d 828 (D.C. Cir. 2001) ........................................................................... 11
*Tao v. Freeh,*
 27 F.3d 635 (D.C. Cir. 1994) ............................................................................... 2
*Tax Analysts v. I.R.S.,*
 294 F.3d 71 (D.C. Cir. 2002) ............................................................................... 8
*Weisberg v. U.S. Dep't of Justice,*
 745 F.2d 1476 (D.C. Cir. 1984) ........................................................................... 3
*Wilbur v. CIA,*
 355 F.3d 675 (D.C. Cir 2004) .......................................................................... 4, 5
*Wilner v. Nat'l Sec. Agency,*
 592 F.3d 60 (2d Cir. 2009) ................................................................................ 10
*Wolf v. CIA,*
 473 F.3d 370 (D.C. Cir. 2007) ............................................................... 7, 9, 10, 11

**Statutes**

5 U.S.C. § 552 ................................................................................................................ 1

5 U.S.C. § 552(b)(7) ....................................................................................................... 7

5 U.S.C. § 552(b)(7)(E) (2018) ....................................................................................... 9

5 U.S.C. § 552a .............................................................................................................. 1

5 U.S.C. § 552(b)(6) ....................................................................................................... 6

5 U.S.C. § 552(b)(7)(C) .................................................................................................. 6

5 U.S.C. § 552(b)(7)(E) .................................................................................................. 6

49 U.S.C. § 44909 .......................................................................................................... 5

## BACKGROUND

Plaintiff Ahmed H. Abubaker El Khazmy ("Plaintiff") commenced this action on March 1, 2023, under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), against Customs and Border Protection ("CBP").    *See generally* ECF No. 1, Compl.    Plaintiff subsequently amended his complaint on May 26, 2023, alleging claims under FOIA, 5 U.S.C. § 552a.    *See generally* ECF No. 9, Am. Compl.    On May 31, 2022, Plaintiff submitted his FOIA request, the full details of which are noted in CBP's Statement of Undisputed Material Facts filed contemporaneously herewith.    In general, Plaintiff sought records from CBP related to a travel difficulty, i.e., an alleged denial of boarding on an aircraft bound for the United States.

CBP conducted searches reasonably calculated to produce records responsive to the request and identified fourteen pages of responsive records, but it refused to search or confirm or deny the existence of records in potentially other systems, including those pertaining to any terrorist watch lists.    After reviewing the records and identifying non-exempt material, six pages were released in full and eight pages were released with partial redactions.    CBP accounted for responsive records pursuant to applicable agency policies and procedures and provided a response on March 23, 2023.    *See generally* Declaration of Patrick A. Howard ("Howard Decl."), Ex. 1 hereto.

Plaintiff confirmed via phone on November 15, 2023, that he is not contesting the exemptions taken on the released documents.    Accordingly, the only issue before the Court now is whether CBP conducted an adequate search and whether CBP failed to produce records.    Plaintiffs argue that CBP did not conduct an adequate search and failed to produce records because the documents provided to Plaintiff "did not include any records of his denial of boarding WestJet flight number WS 1422 on December 17, 2021, departing from Edmonton, Alberta with direct service to Los Angeles, California, despite the FOIA request specifically requesting such

information."  Am Comp. 16. As explained below and in further detail in the accompanying Declaration of Patrick A. Howard, CBP conducted an adequate search, and properly accounted for all responsive records. Accordingly, CBP is entitled to judgment as a matter of law.

## STANDARD OF REVIEW

### I.    Summary Judgment Standard

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.

The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 248.   Once the moving party has met its burden, the nonmoving part may not rest upon the mere allegations or denials of his pleading but must instead establish more than "the mere existence of a scintilla of evidence" in support of his position. *Anderson*, 477 U.S. at 252.   Thus, summary judgment is due if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [nonmovant]."  *Id.*   When determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

### II.    Summary Judgment Standard as Applied to FOIA Cases

To obtain summary judgment in a FOIA action, an agency must show, viewing the facts in a light most favorable to the requester, that there is no genuine issue of material fact as to the

agency's compliance with FOIA.    *Steinberg v. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994).

The Court may enter summary judgment based solely upon information provided in affidavits or

declarations when those affidavits or declarations describe "the justifications for nondisclosure

with reasonably specific detail, demonstrate that the information withheld logically falls within the

claimed exception, and are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith."    *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir.

1981).    A plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting

affidavits "through purely speculative claims about the existence and discoverability of other

documents."    *Brown v. Dep't of Just.*, 742 F. Supp. 2d 126, 129 (D.D.C. 2010).

## ARGUMENT

### I.    CBP Conducted an Adequate Search

CBP's search for responsive records was adequate.    "FOIA directs that 'each agency,

upon any request for records . . . shall make the records promptly available to any person' unless

the requested records fall within one of the statute's nine exemptions."    *Loving v. Dep't of Def.*,

550 F.3d 32, 37 (D.C. Cir. 2008) (quoting 5 U.S.C. § 552(a)(3)(A)).    An agency is entitled to

summary judgment with respect to adequacy of its search if it "demonstrate[s] that it made a 'good

faith effort to conduct a search . . . using methods which can be reasonably expected to produce

the information requested.'"    *DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (quoting

*Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).    "[T]he issue to be resolved is not

whether there might exist any other documents possibly responsive to the request, but rather

whether the *search* for those documents was *adequate*."    *Weisberg v. Dep't of Just.*, 745 F.2d

1476, 1485 (D.C. Cir. 1984) (emphasis in original).    The search is thus gauged "not by the fruits

of the search, but by the appropriateness of the methods used to carry out the search."    *Ancient*

*Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (cleaned up). In short, "[a] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *DiBacco*, 795 F.3d at 194-95 (quoting *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986)).

An agency can establish the reasonableness of its search by "reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. Dep't of Com.*, 473 F.3d 312, 318 (D.C. Cir. 2006). Such affidavits are sufficient if they "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." *Chambers v. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) (quoting *McCready v. Nicholson*, 465 F.3d 1, 14 (D.C. Cir. 2006)). This standard is not demanding. "[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice[.]" *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted); *see also Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir 2004) ("[M]ere speculation that as yet uncovered documents might exist[] does not undermine the determination that the agency conducted an adequate search for the requested records.").

Here, as explained in the Howard Declaration, CBP conducted searches reasonably calculated to produce records responsive to Plaintiff's FOIA request. Howard Decl. ¶ 7. Specifically, the agency conducted searches for these documents in the following source systems determined most likely to have responsive records, including the Automated Targeting System's

Unified Passenger Module, TECS, including the Border Crossing Information system, and e3. *Id*. To carry out its border security mission and enforce applicable laws at the border, CBP personnel conduct research and analysis on these systems to identify possible law enforcement or security risks and develop intelligence. *Id*. The Automated Targeting System maintains the official record for Passenger Name Record data which is collected by CBP pursuant to its statutory authority, 49 U.S.C. § 44909, as implemented by 19 C.F.R. § 122.49d. *Id*. ¶ 10. Specifically, U.S. law requires air carriers operating flights to, from, or through the United States to provide CBP with certain passenger reservation information. *Id*. This data is collected from airline travel reservations and is transmitted to CBP prior to departure. *Id*.

TECS is an overarching law enforcement information collection, risk assessment, and information sharing system as well as a repository for law enforcement and investigative information, including inspection records. *Id*. ¶ 11. TECS is comprised of several modules that collect, maintain and evaluate data, conduct targeting analysis, and make available information to appropriate law enforcement officers of the U.S. Government. *Id*. TECS includes border crossing information for all individuals who enter, are admitted or paroled into, and (when available) exit from the United States. *Id*. e3 is a data portal related to CBP's law enforcement and immigration mission that collects and transmits biographic, encounter, and biometric data for identification and verification of individuals encountered or apprehended by CBP between the ports of entry. *Id*. ¶ 12. U.S. Border Patrol agents use e3 to process subjects during intake, capture and record the subject's biometrics, associate subjects in the same family unit or family group, and process subjects to completion. *Id*. CBP FOIA also sought records directly from the Office of Field Operations Preclearance Operations, International Operations and Advisory Directorate at its Edmonton, Alberta, Canada preclearance location. *Id*. ¶ 13.

CBP's search of the relevant aforementioned systems identified fourteen pages of responsive records.  *Id*. ¶ 14.  CBP accounted for responsive records pursuant to applicable agency policies and procedures and provided a response on March 23, 2023.  *Id*. ¶ 12.  After reviewing the records and identifying non-exempt material, six pages were released in full and eight pages were released with partial redactions *Id*.  CBP withheld certain information in the records provided under FOIA Exemptions 6, 7(C), and 7(E).  *Id*. ¶ 9.  Based on the foregoing, this Court should conclude CBP's search for responsive records was adequate.

## II.    **CBP Properly Accounted for All Responsive Records**

As noted in the Howard declaration, Plaintiff's request seeks "[a]ny and all" records concerning Plaintiff, as well as records arising from an alleged travel difficulty, *i.e.*, an alleged denial of boarding on an aircraft bound for the United States.  Patrick Decl. ¶ 8.  As CBP explains in standard notice language it provides to requesters, pursuant to Exemption 7(E), when an individual submits a FOIA request seeking (1) "'all records' on a particular person that may be maintained by the agency," (2) "broad categories of records related to individual(s)," and/or (3) information "related to alleged travel difficulties," CBP treats this as a request that can be interpreted as a request for records that may be maintained by CBP regarding whether a particular person is or has ever been listed in the government terrorist watch list or otherwise identified as a counterterrorism or national security concern.  *See* Patrick Decl. ¶ 8; Ex. 3.  CBP generally does not search for, and can neither confirm nor deny the existence of, certain records which would tend to indicate whether a particular person is or ever was listed on the terrorist watch list or otherwise identified as a counterterrorism or national security concern.  Such a *Glomar* response is plainly appropriate in this context.  *See, e.g.*, *Magassa v. Transp. Sec. Admin.*, Civ. A. No. 19-1953 (EGS), 2022 WL 971207, at *8 (D.D.C. Mar. 31, 2022) ("TSA's Glomar response to plaintiff's

FOIA request[,]" which sought watch-list information, "was entirely proper and squarely within the realm of its authority") (citing *Tooley v. Bush*, Civ. A. No. 06-0306 (CKK), 2006 WL 3783142, at *20 (D.D.C. Dec. 21, 2006) ("TSA has thus demonstrated that its *Glomar* response to Plaintiff's FOIA request was entirely proper, insofar as TSA construed that request as one for records concerning Plaintiff's presence on TSA watch lists"), and *Gordon v. FBI*, 388 F. Supp. 2d 1028, 1037 (N.D. Cal. 2005) ("Requiring the government to reveal whether a particular person is on the watch lists would enable criminal organizations to circumvent the purpose of the watch lists by determining in advance which of their members may be questioned.")).

In light of Plaintiff's request seeking "any documents or records" concerning Plaintiff and arising from alleged travel difficulties, the statements in CBP's standard notice provided to FOIA requesters would be relevant, informing the requester that provision of the notice "should not be taken as an indication that additional records beyond those identified in the agency's response do or do not exist with respect to your particular request." Ex. 3. As argued above, defendant did conduct an adequate search for any records responsive to the Plaintiff's request and provided all responsive records. The release of such records was done in accordance with CBP's standard practice as it relates to requests for "all records."

### A. Threshold Requirements of Exemption 7

An agency is permitted to "'refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under a FOIA exception." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)). "Such an agency response is known as a *Glomar* response and is proper if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Id. Glomar* responses are permitted under FOIA because the exemptions to the statute "cover not only the content of protected government records but also the fact of their existence or nonexistence, if that

fact itself properly falls within the exemption." *Larson v. Dep't of State*, 565 F.3d 857, 861 (D.C. Cir. 2009) (discussing Exemptions 1 and 3). Neither a "search for responsive records" nor the submission of a "'Vaughn index" is required for a *Glomar* response to be held valid because the *Glomar* response "narrows the FOIA issue to the existence of records vel non." *Wolf*, 473 F.3d at 374 n.4.

Federal agencies must meet the threshold requirement of Exemption 7 before they may withhold requested documents under any of its subparts. *Pratt v. Webster*, 673 F.2d 408, 416 (D.C. Cir. 1982). That threshold requires the records or information to be "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). "In assessing whether records are compiled for law enforcement purposes . . . the focus is on how and under what circumstances the requested files were compiled, . . . and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Banks v. Dep't of Just.*, 538 F. Supp. 2d 228, 239 (D.D.C. 2008) (citing *Jefferson v. Dep't of Just.*, 284 F.3d 172-77 (D.C. Cir. 2002)). The types of law to be enforced for FOIA Exemption 7 purposes includes administrative, regulatory, civil, and criminal law. *Ctr. for Nat'l Policy Review on Race & Urban Issues v. Weinberger*, 502 F.2d 370, 373 (D.C. Cir. 1974) (holding that an administrative determination has the "salient characteristics of 'law enforcement' contemplated" by Exemption 7 threshold requirement); *see also McErlean v. Dep't of Just.*, Civ. A. No. 97-7831, 1999 WL 791680, at *8 (S.D.N.Y. Sept. 30, 1999) (stating that "it is well-settled that documents compiled by the INS in connection with the administrative proceedings authorized by the Immigration and Naturalization Act are documents compiled for 'law enforcement purposes'").

Courts give great deference to a "law enforcement agency['s]" assertion that its records were for law enforcement purposes because government agencies "typically go about their

intended business." *Pratt*, 673 F.2d at 418. Considering that deference, the D.C. Circuit has opined that an agency need only show that the nexus between the agency's activity and its law enforcement duties "must be based on information sufficient to support at least 'a colorable claim' of its rationality." *Keys v. Dep't of Just.*, 830 F.2d 337, 340 (D.C. Cir. 1987) (quoting *Pratt*, 673 F.2d at 421); *see also Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002) (noting that the Exemption 7 threshold may be satisfied even where the records in question do not relate to a particular investigation).

Here, the records that Plaintiff is requesting would be complied for law enforcement purposes in that the information would have been created and used by CBP in its law enforcement mission to secure the border of the United States. *See* Howard Decl. ¶ 8. Here, CBP has met the threshold requirement under Exemption 7 since any such responsive records, if they exist, would have clearly been compiled for law enforcement purposes.

### B.    CBP Properly Issued a *Glomar* Response Pursuant to Exemption 7(E)

FOIA Exemption 7(E) affords protection to law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E) (2018). Agencies may establish the applicability of Exemption 7(E) through a declaration. *See ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. January 2011). The Court accords such an affidavit "substantial weight", so long as it "describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, . . . summary judgment is warranted on the basis of the affidavit

alone." *Id.* (internal quotation marks omitted); *see Larson*, 565 F.3d at 862; *Wolf*, 473 F.3d at 374-75; *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *ACLU*, 628 F.3d at 619 (quoting *Larson,* 565 F.3d at 862 (quoting *Wolf*, 473 F.3d at 374-75)).

Under FOIA, a response in which the agency refuses to confirm or deny whether responsive records exist is known as a *Glomar* response. *See*, *e.g.*, *Larson v. Dep't of State*, 565 F.3d 857, 861 (D.C. Cir. 2009); *Jefferson v. Dep't of Just.*, 284 F.3d 172, 176 (D.C. Cir. 2002). An agency may generally meet its burden under FOIA by submitting a declaration from "an appropriately qualified official attesting to the basis for the agency's decision" and providing "detailed and specific information demonstrating 'that material withheld is logically within the domain of the exemption claimed.'" *Campbell v. Dep't of Just.*, 164 F.3d 20, 30 (D.C. Cir. 1998). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Larson*, 565 F.3d at 776 (quoting *Wolf*, 473 F.3d at 374-75). The same standard applies when the Government issues a *Glomar* response. In such circumstances, the agency's affidavit must explain how the fact of the existence or non-existence of responsive records constitutes information protected by a FOIA exemption. *Phillipi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976); *Wolf*, 473 F.3d at 374 ("In determining whether the existence of agency records *vel non* fits a FOIA exemption, courts apply the general exception review standard established in non-*Glomar* cases.").

A *Glomar* response is appropriate where, as here, confirming or denying whether responsive records exist would itself cause the harm that a given FOIA exemption is intended to prevent. *See*, *e.g.*, *Wolf*, 473 F.3d at 374 (stating that a *Glomar* response "is proper if the fact of the existence or nonexistence of agency record falls within a FOIA exemption"); *Gardels v. CIA*,

689 F.2d 1100, 1103 (D.C. Cir. 1982) ("[A]n agency may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception."); *see also Wilner v. NSA*, 592 F.3d 60, 68 (2d Cir. 2009) ("The *Glomar* doctrine is well settled as a proper response to a FOIA request because it is the only way in which an agency may assert that a particular FOIA statutory exemption covers the 'existence or nonexistence of the requested records' in a case in which a plaintiff seeks such records."). The *Glomar* response has been frequently invoked with respect to FOIA Exemption 3, wherein the confirmation or denial of the existence of records is subject to a statute preventing public disclosure. *See, e.g.*, *Gardels*, 689 F.2d at 1103; *Agility Pub. Warehousing Co. v. NSA*, 113 F. Supp. 3d 313 (D.D.C. 2015); *Carter v. NSA*, 962 F. Supp. 2d 130 (D.D.C. 2013); *Int'l Counsel Bureau v. CIA*, 774 F. Supp. 2d 262 (D.D.C. 2011); *see also Cozen O'Connor v. Dep't of Treasury*, 570 F. Supp. 2d 749, 787 (E.D. Pa. 2008) (concluding that application of Exemptions 1 and 7(A) was adequate to utilize the *Glomar* response).

In reviewing an agency's *Glomar* response, courts must be mindful when the information requested "implicat[es] national security, a uniquely executive purview." *Ctr. for Nat'l Sec. Studies v. Dep't of Just.*, 331 F.3d 918, 926-27 (D.C. Cir. 2003). Indeed, the Supreme Court has cautioned that "weigh[ing] the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising" national security is a task best left to the Executive Branch. *CIA v. Sims*, 471 U.S. 159, 180 (1985). As a result, in the FOIA context, courts have "consistently deferred to executive affidavits predicting harm to the national security and have found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927; *see also Wolf*, 473 F.3d at 374 ("[C]ourts must 'accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed

record.'") (emphasis in original); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 840 (D.C. Cir. 2001) ("[S]ubstantial weight [is] owed to agency explanations in the context of national security, to qualify for withholding under Exemptions 1 and 3."); *Salisbury v. United States*, 690 F.2d 966, 970 (D.C. Cir. 1982) (noting that agencies possess "unique insights" into the adverse effects that might result from public disclosure of classified information); *Gardels*, 689 F.2d at 1104-05 ("Once satisfied that proper procedures have been followed and that the information logically falls into the exemption claimed, the courts 'need not go further to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith.'").

The use of a *Glomar* response under Exemption 7(E), i.e., where the agency neither confirms nor denies the existence of the requested records, has been approved when disclosing the abstract fact that a particular law enforcement technique that was employed would reveal the circumstances under which that technique was used.   *See Phillippi*, 546 F.2d at 1013 (approving agency's response where it would "neither confirm nor deny" the existence of responsive records—i.e., a "*Glomar* response"); *Braun v. FBI*, Civ. A. No. 18-2145, 2019 WL 3343948, at *5 (D.D.C. July 25, 2019) (affirming refusal to confirm or deny whether a requester is on any watch list because public disclosure would risk "giving away information that might tip off those on the watch list or aid those who seek to avoid being placed on it").

In light of Plaintiff's request seeking "any documents or records" concerning Plaintiff and arising from his alleged travel difficulties, CBP followed its applicable practice and did not search additional systems apart from those identified above in Section I, and provided Plaintiff its standard notice, which informs the requester that provision of the notice "should not be taken as an indication that additional records beyond those identified in the agency's response do or do not exist with respect to your particular request."   Howard Decl. ¶ 8.   Revealing whether additional

records exist would cause significant harm.    Searching for, or revealing the existence or nonexistence of, such records could reveal confidential government national security information, including "whether a particular person is or has ever been listed in the government terrorist watch list or otherwise identified as a counterterrorism or national security concern."    Ex. 3. Maintaining the confidentiality of government watch lists and the identification of specific individuals as counterterrorism or national security concern is necessary to achieve the counterterrorism and national security objectives of the U.S. Government and if the U.S. government routinely revealed this information, terrorists would be able to take actions to avoid detection by government authorities.    *Id.*

Indeed, this case closely parallels that recently confronted by the Court in *Magassa v. FBI*, Civ. A. No. 19-1952 (JMC), 2023 WL 5174335, at \*8 (D.D.C. Aug. 11, 2023).    In that case, the FBI issued a *Glomar* response refusing to confirm or deny the existence of any records about the requester pertaining to government watch lists, asserting, in relevant part, FOIA Exemption 7(E) as the basis for its assertion.    *Id.* at \*7.    Specifically, the FBI explained:

> non-disclosure was appropriate under Exemption 7(E) of FOIA, which exempts information "compiled for law enforcement purposes" to the extent that the information "would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." [The FBI] argued that the criteria for placing individuals on watch lists is not publicly known, so revealing the identities of people on the watch list could allow others to deduce the criteria and change their behavior to avoid government detection. Also, on a more granular level, informing an individual whether or not they are on a watch list could prompt that individual to alter their conduct and impede an FBI investigation.

*Id.* (internal citations omitted).    The Court approved the FBI's *Glomar* response under FOIA Exemption 7(E).    In so doing, the Court held that the FBI's reasons for providing a *Glomar* response were "logical, and therefore the FBI's *Glomar* response is adequate.    Watch lists are compiled in furtherance of the FBI's law enforcement, national security, and intelligence goals.

Disclosing whether an individual is on a watch list could lead that individual or others to alter their behavior in an effort to circumvent the law. This reasoning justifies withholding the existence (or non-existence) of an individual's name on a watch list." *Id.* at *8 (internal citation omitted).

The circumstances in *Magassa* are on all fours with that presented here. A law enforcement agency (here CBP) has asserted Exemption 7(E) as the basis for a *Glomar* response wherein the agency refuses to confirm or deny the existence of records pertaining to government watch lists. Providing records about government watch lists, including who is or who is not included on them, would allow wrongdoers insight as to how the government operates those lists, thwarting the effectiveness of this important law enforcement technique. As such, CBP's Exemption 7(E) *Glomar* response was plainly appropriate in this circumstance. *See also Kalu v. IRS*, 159 F. Supp. 3d 16, 24 (D.D.C. 2016) (approving FBI's use of *Glomar* response in connection with request for watch list records; "That the watch list itself is public knowledge will not defeat the FBI's invocation of *Glomar* here."); *Rhodes v. FBI*, 316 F. Supp. 3d 173, 177 (D.D.C. 2018) ("it is standard practice for the FBI to neither confirm nor deny whether a FOIA requester's name appears on a watch list. The FBI invoked FOIA Exemption 7(E) in response to Plaintiff's request. . . . Another judge of this court has approved the FBI's *Glomar* response regarding watch-list information based on the same rationale by the same declarant under nearly the same circumstances. . . . Nothing supports a departure in this case.").

*        *        *

14

**CONCLUSION**

For the foregoing reasons, the Court should grant summary judgment in favor of CBP.

Dated: November 17, 2023
     Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:      /s/ *Patricia K. McBride*
    PATRICIA K. MCBRIDE
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-7123
    patricia.mcbride@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AHMED H. ABUBAKER EL KHAZMY, | |
| Plaintiff, | |
| v. | Civil Action No. 23-0564 (CRC) |
| CUSTOMS AND BORDER PROTECTION, | |
| Defendant. | |

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56(b) and Local Civil Rule 7(h), Defendant the U. S. Customs and Border Protection ("CBP"), respectfully submits this statement of undisputed material facts.

1.    On May 31, 2022, Plaintiff submitted his Freedom of Information Act ("FOIA") request for "Any documents or records, electronic or otherwise, with information regarding any entries, attempted entries, or departures the applicant may have; [a]ny documents or records regarding denials of entry for the applicant; [s]pecifically, any documents or records regarding denial of boarding WestJet flight number WS 1422 on December 17, 2021, departing from Edmonton, Alberta with direct service to Los Angeles, CA; [a]ny documents, records, or information relied upon to deny entry or boarding to the applicant; [a]ny and all electronic records related to the applicant, including but not limited to the following: TECS – Person Encounter List, TECS – I-94 Results List, TECS – Secondary Inspection Report, TECS – Person Query, and I-94 Closeout Comments; [c]omplete records of any voluntary returns, voluntary departures, expedited removals, or any orders of removal that the applicant may have, [a]ny records related to any expedited removal, including but not limited to: any Notice to Alien Ordered Removed;

Verification of Removal; Notice and Order of Expedited Removal; and Record of Sworn Statement; [a]ny documents or records provided to CBP by the applicant; [c]omplete records of any encounters with the applicant, including any audio or video recordings of contact with the applicant; [r]ecords of any CBP Background Investigations; [r]ecords regarding the applicant's inspection or examination upon arrival at a U.S. Port of Entry, including any I-94 records, Passenger Name Records ('PNR'), advance parole records, and information regarding any entries and exits; [a]ny I-213 records regarding the applicant, including complete documentation regarding any and all statements taken and any documentation presented during any prior encounters as well as complete disposition information related to any prior encounters; [a]ny communications, including emails and any type of electronic communication, to or from CBP regarding the applicant."   Declaration of Patrick A. Howard ("Howard Decl.") ¶ 6.

2.     Plaintiff, in his FOIA request, seeks documents and records related to a travel difficulty, i.e., an alleged denial of boarding on an aircraft bound for the United States.   He also seeks "[a]ny and all" records related to himself.   As CBP explains in standard notice language it provides to requesters, pursuant to Exemption 7(E), when an individual submits a FOIA request seeking (1) "'all records' on a particular person that may be maintained by the agency," (2) "broad categories of records related to individual(s)," and/or (3) information "related to alleged travel difficulties," absent extraordinary circumstances, CBP treats this as a request that can be interpreted as a request for records that may be maintained by CBP regarding whether a particular person is or has ever been listed in the government terrorist watch list or otherwise identified as a counterterrorism or national security concern.   *See id.; see also* Ex. 3 (also available at https://www.cbp.gov/sites/default/files/assets/documents/2019-Dec/definitions-exemptions-foia_0.pdf); Ex. 2.

3.     CBP generally does not search for, and can neither confirm nor deny the existence of, certain records which would tend to indicate whether a particular person is or ever was listed on the terrorist watch list or otherwise identified as a counterterrorism or national security concern. Such a "neither confirm nor deny" response is known legally as a *Glomar* response.   Howard Decl. ¶ 8.   In light of Plaintiff's request seeking "any documents or records" concerning Plaintiff and arising from alleged travel difficulties, the statements in CBP's standard notice provided to FOIA requesters would be relevant, informing the requester that provision of the notice "should not be taken as an indication that additional records beyond those identified in the agency's response do or do not exist with respect to your particular request."   *Id.*; Exhibit 3.

4.     As noted in Exhibit 3, searching for, or revealing the existence or nonexistence of, additional records could reveal confidential government information, including "whether a particular person is or has ever been listed in the government terrorist watch list or otherwise identified as a counterterrorism or national security concern."   Ex. 3.   Maintaining the confidentiality of government watch lists and the identification of specific individuals as counterterrorism or national security concern is necessary to achieve the counterterrorism and national security objectives of the U.S. Government and if the U.S. government routinely revealed this information, terrorists would be able to take actions to avoid detection by government authorities.   *Id.*

5.     CBP conducted searches for documents in the following source systems determined most likely to have responsive records, including the Automated Targeting System's Unified Passenger Module, TECS (not an acronym), including the Border Crossing Information system, and e3.   Howard Decl. ¶ 7.   To carry out its border security mission and enforce applicable laws

at the border, CBP personnel conduct research and analysis on these systems to identify possible law enforcement or security risks and develop intelligence.  *Id.*

6.     The Automated Targeting System maintains the official record for Passenger Name Record data which is collected by CBP pursuant to its statutory authority, 49 U.S.C. § 44909, as implemented by 19 C.F.R. § 122.49d.  *Id.* ¶ 10; U.S. Customs and Border Protection, DHS/CBP-006 – Automated Targeting System, System of Records (Federal Register, Volume 77 Issue 99 (Tuesday, May 22, 2012)); *see also* DHS/CBP/PIA-006(e) Automated Targeting System (Jan. 13, 2017),    https://www.dhs.gov/sites/default/files/2022-07/privacy-pia-cbp006-ats-july2022_0.pdf. Specifically, U.S. law requires air carriers operating flights to, from, or through the United States to provide CBP with certain passenger reservation information.   Howard Decl. ¶ 10.   This data is collected from airline travel reservations and is transmitted to CBP prior to departure.  *Id.*

7.     TECS is an overarching law enforcement information collection, risk assessment, and information sharing system and is a repository for law enforcement and investigative information, including inspection records.  *Id.* ¶ 11; U.S. Customs and Border Protection – 011 TECS System of Records Notice, Federal Register, Volume 77 Issue 99 (May 22, 2012); *see also* DHS/CBP/PIA-021: TECS System: Platform (Aug. 12, 2016), https://www.dhs.gov/sites/default/files/2022-05/privacy-pia-cbp-tecs%20platform-april2022.pdf.   TECS is comprised of several modules that collect, maintain and evaluate data, conduct targeting analysis, and makes information available to appropriate law enforcement officers of the U.S. Government.   Howard Decl. ¶ 11.   TECS includes border crossing information for all individuals who enter, are admitted or paroled into, and (when available) exit from the United States, regardless of method or conveyance.  *Id.*; Privacy Act of 1974; Department of Homeland Security/U.S. Customs and

Border Protection-007 Border Crossing Information System of Records, 81 Fed. Reg. 89,957 (Jan. 12, 2017).

8.      e3 is a data portal related to CBP's law enforcement and immigration mission that collects and transmits biographic, encounter, and biometric data for identification and verification of individuals encountered or apprehended by CBP between the ports of entry.   Howard Decl. ¶ 12.   U.S. Border Patrol agents use e3 to process subjects during intake, capture and record the subject's biometrics, associate subjects in the same family unit or family group, and process subjects to completion.  *Id.;* DHS/CBP/PIA-012-CBP Portal (e3) to ENFORCE/IDENT (Aug. 2, 2021),   https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp012c-e3-august2021.pdf.

9.      CBP FOIA also sought records directly from the Office of Field Operations Preclearance Operations, International Operations and Advisory Directorate at its Edmonton, Alberta, Canada preclearance location.   Howard Decl. ¶ 13.

10.      CBP's search of the foregoing systems identified fourteen pages of responsive records.  *Id.* ¶ 14.   CBP accounted for responsive records pursuant to applicable agency policies and procedures, as described in greater detail in the Disposition Notice, attached as Exhibit 2, and provided a response on March 23, 2023.  *Id.*   After reviewing the records and identifying non-exempt material, six pages were released in full and eight pages were released with partial redactions. *Id.*

11.      Per a phone call on November 15, 2023, Plaintiff is not contesting the exemptions taken on the released documents.

12.      CBP's response on March 23, 2023, reflects CBP's final response.   Howard Decl. ¶ 15.

Dated: November 17, 2023                    Respectfully submitted,
      Washington, DC

                                                          MATTHEW M. GRAVES D.C. Bar #481052
                                                          United States Attorney

                                                          BRIAN P. HUDAK
                                                          Chief, Civil Division

                                         By: _____ /s/ *Patricia K. McBride* _____
                                              PATRICIA K. MCBRIDE
                                              Assistant United States Attorney
                                              601 D Street, NW
                                              Washington, DC 20530
                                              (202) 252-7123
                                              patricia.mcbride@usdoj.gov

                                        *Attorneys for the United States of America*

6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AHMED H. ABUBAKER EL KHAZMY,

Plaintiff,

v.                                          Civil Action No. 23-0564 (CRC)

CUSTOMS AND BORDER PROTECTION,

Defendant.

## [PROPOSED] ORDER

UPON CONSIDERATION of the Defendant's motion for summary judgment and the entire record in this matter, it is hereby:

ORDERED that the Defendant's Motion is GRANTED; and it is further

ORDERED that summary judgment is entered in favor of Defendant.

Dated this ___ day of _____, 2023.


_____
CHRISTOPHER R. COOPER
United States District Judge